**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DANIELLE ROBERTS, | ) | CASE NO. 3:22-CV-00051-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | **MEMORANDUM ORDER &** |
| Defendant, | ) | **OPINION** |
| | ) | |

## I.      Introduction

Plaintiff, Danielle Roberts ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Period of Disability ("POD") and Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). For the reasons set forth below, the Court AFFIRMS the Commissioner's decision.

## II.      Procedural History

Claimant filed an application for POD and DIB on December 2, 2019, alleging a disability onset date of October 25, 2019. (ECF No. 8, PageID #: 79).[1] The application was denied initially and upon reconsideration, and Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 79). On December 7, 2020, an ALJ held a telephonic hearing,

---

[1] Claimant also filed a previous application under Title II and received an unfavorable decision from an ALJ on December 27, 2016. (*See* ECF No. 8, PageID #: 79; ECF No. 8, PageID #: 142 (decision)).

during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 79). The ALJ issued a written decision finding Claimant was not disabled on January 26, 2021. (ECF No. 8, PageID #: 76). The ALJ's decision became final on November 23, 2021, when the Appeals Council declined further review. (ECF No. 8, PageID #: 67).

Claimant filed her complaint challenging the Commissioner's final decision on January 11, 2022. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 12, 15, 16). Claimant asserts the following assignments of error:

> (1) Whether the ALJ erred in his evaluation of Plaintiff's subjective complaints and erred when failing to adequately consider Plaintiff's physical impairments.
>
> (2) Whether the ALJ's RFC finding is unsupported by substantial evidence, and whether the ALJ failed to follow the regulations regarding opinion evaluation.

(ECF No. 12, PageID #: 772).

## III.  Background

### A. Relevant Hearing Testimony

The ALJ summarized the relevant testimony from Claimant's hearing:

> With respect to her symptoms the claimant testified that she stopped working because she was no longer able to physically perform her past work as a press operator due to nearly constant pain in her hands, feet, and left shoulder (Testimony). The claimant related that she had difficulties grabbing and holding onto things with her hands (Testimony). The pain in her feet limited her ability to stand on the concrete floor and she could no longer wear steel toe boots (Testimony). . . . For example, the claimant testified that she recently started using a cane within the past three months (Testimony). . . . At the hearing, the claimant related that due to her pain, the claimant was limited significantly with her ability to sit, stand, walk, and maintained concentration and attention due to a combination of her impairment-related symptoms including her pain . . . . At the hearing, the claimant admitted activities of daily living including, keeping her home in order and she cares for her children. The claimant explained that her children are typically home all day

2

> because she home schools her children. Hearing testimony indicates
> the claimant cooks meals regularly, cares for small plants, and is
> able to use her phone and the Internet on her phone (Testimony).
> The claimant uses the internet to research recipes and information
> regarding homeschooling (Testimony). The claimant typically
> drives her daughter to her riding lesson, which she estimates takes
> about 10 minutes. The claimant explained that she "reads a lot"
> (Testimony).

(ECF No. 8, PageID #: 85–86, 87, 88).

Mark Pinti, a vocational expert also testified at the hearing. (ECF No. 8, PageID #: 136).

Mr. Pinti testified that Claimant would be precluded from past work but that there were several

unskilled, sedentary jobs Claimant could work in the national economy. (ECF No. 8, PageID

#:139). However, if Claimant were to work these jobs, she could not be off-task more than ten

percent of the time and would have to frequently handle and finger. (ECF No. 8, PageID #: 139–

40).

### B.  Relevant Medical Evidence

The ALJ also summarized Claimant's health records and symptoms (sic):

> The claimant has fibromyalgia, obesity, osteoarthritis of the hands,
> wrists, ankles, and feet, mild degenerative joint disease of the right
> knee, status-post subtle non-displaced fracture of the distal fibula. I
> has read and considered all the medical evidence of record in the
> record, including the evidence from prior to the alleged onset date.
> Prior to her alleged onset date, the claimant followed up with
> Charles J. Hoehn, D.P.M., a podiatrist, who, prescribed and
> dispensed custom orthotics and advised the claimant get new shoes
> from Fleet feet sports, and use a Van Wert brace (B2F/14, dated
> March 12, 2019). However, in June 2019, Dr. Hoehn noted the
> claimant continued to wear bad shoes and memory foam inserts. She
> had not followed his treatment recommendations and had not gotten
> new tennis shoes or power step insteps (B2F/2, dated June
> 26, 2019). He referred the claimant to Nathan Hensley, D.P.M. for
> a surgical consultation (B2F/5). Shortly before her alleged onset
> date, Thomas Lautzenheiser, M.D., noted there was no evidence of
> rheumatoid arthritis (B10F/17).
>
> However, there is no evidence to support any disabling limitation

prior to the claimant's date last insured. Rather than rely upon her primary care physician, the claimant followed up with John Buonocore, D.O. and Kenneth R. Austin, M.D., pain management specialist (B3F, B9F, and B10F). Dr. Austin a pain management specialist, who treated her feet and hand pain with Lyrica and a compound cream with lidocaine (B7F, B8F,and B11F). Dr. Hensley prescribed Mobic to treat her pain (B3F/10). She also took Cymbalta, Voltaren, and Lyrica to treat her fibromyalgia-related pain (B10F/17).

The positive objective clinical and diagnostic findings since the alleged onset date detailed below do not support more restrictive functional limitations than those assessed herein. The record shows the claimant has sinus tarsi syndrome of left ankle, left acquired pes planus, right acquired pes planus and valgus deformity of both great toes (B2F/11). There were no acute osseous abnormalities of the claimant's left foot as indicated in x-rays dated December 22, 2018 (B12F/13-14). X-ray of the claimant's left foot showed the claimant had moderate hallux valgus deformity and mild inferior subluxation of the talonavicular joint (B2F/6). The claimant has a severe pes planus deformity and was referred for surgical consultation (B2F/5).

While her medically determinable impairments could reasonably be expect to cause, in general, the alleged symptoms and limitations, the magnitude of the pain and the extent of those symptoms and limitations are not supported by the objective medical evidence, as discussed above. For example, around her alleged onset date, Dr. Buonocore observed the claimant had decreased range of motion, tenderness, and bony tenderness in both wrists, ankles, and hands (B7F/4 and B9F/34, dated October 25, 2019). Dr. Lautzenheiser observed the claimant has more than 10 fibromyalgia tender points (B10F/4, dated November 7, 2019). She had tenderness in her foot and left hand, but the claimant's coordination was normal (B10F/5). Dr. Hensley noted that the MRI of her left foot showed a benign cyst within the midfoot along the distribution of the talar navicular joint (B3F/9, dated November 22, 2019). [] Hensley stated the claimant had some diffuse peri-malleolar paresthesia type formation bilaterally which were more sensory cutaneous in nature (B3F/9, dated November 22, 2019). The claimant had full (5/5) muscle strength to all extrinsic muscle groups tests (B3F/9). Dr. Buonocore observed the claimant exhibited decreased range of motion, tenderness, and bony tenderness in both wrists, ankles, and hands (B7F/3).

The record supports the claimant's symptoms have remained stable prior to her date last insured. Dr. Austin noted the claimant's

4

shoulder, hip, sacroiliac, and knee provocative maneuvers were negative and she had normal and symmetries strength in the upper extremities and lower extremities, though her gait was antalgic (B11F/8, dated December 9, 2019). She had nor abnormalities in the hands, though she had tenderness to palpation in her lumbar spine, left foot, and great toe a (B11F/8). Dr. Austin counseled the claimant about losing weight, referred the claimant to a pain psychologist, and advised her to stop smoking (B11F/9). He increased her Gabapentin dosage and recommended that she continued taking Cymbalta, Mobic, Diclofenac, and Tylenol as needed. He administered urine drug testing (UDT) and deferred prescribing narcotic pain medications until he reviewed the UDT results (B11F/9, dated December 9, 2019).

The records show the claimant obtained additional testing and treatment after her date last insured; however, these records are not within the relevant time period (B12F, B13F, B14F, B15F, and B16F). For example, the claimant testified that she recently started using a cane within the past three months (Testimony). However, this information is not within the relevant period. Notably, the record reflects that shortly after her date last insured, the claimant followed up with Dr. Buonocore and disclosed that she had been using the compound cream with very good results and reported having good results with wrist splints during the day while she was working (B9F/22). The claimant at times could reasonably experience pain, but prior to her date last insured there is no evidence of muscle atrophy, significant weight loss, gross instability, or neurological deficits generally associated with prolonged severe pain on a regular and continual basis.

The claimant has post-traumatic stress disorder (PTSD), depression, alcohol, cannabis, and cocaine use disorders. The claimant reports experiencing longstanding symptoms of depression for most her life, with a history of cutting and suicidal thoughts (B5F/4). However, the claimant has not generally received the type of treatment one would expect given her longstanding complaints. The claimant pursued a limited course of treatment. The claimant has never been psychiatrically hospitalized. The claimant has sporadically participated in mental health counseling as an adult (B5F/4). In January 2020, the claimant disclosed she had last participated in mental health counseling about a year earlier when she was grieving her mother's death (B3F/4). The claimant has managed her symptoms with medications, including Alprazolam, Duloxetine, and Olanzapine (B5F/4). Nevertheless, the record supports a finding that the claimant's mental limitations are consistent with the residual functional capacity assessed above. Dr.

5

> Lautzenheiser stated the claimant had normal mood, affect, speech, behavior, thought content, cognition, and judgment (B10F/5, dated November 7, 2019, and B10F/11, dated October 25, 2019). She was alert and oriented person, place, and time (B10F/5 and 11). Dr. Buonocore stated the claimant had normal mood, affect, behavior, judgment, and thought content (B7F/3 and B9F/35). The claimant was alert, oriented person, place, and time and she had normal attention, mood, speech, behavior, thought content, cognition, and judgment (B10F/6). Dr. Austin stated the claimant had appropriate mood and affect (B11F/8, dated December 9, 2019).

(ECF No. 8, PageID #: 86–88).

### C.  Relevant Opinion Evidence at Issue

There are five opinions at issue in this case. Four state agency consultants examined Claimant and authored recommendations for physical and mental limitations. (ECF No. 8, PageID #: 163–70, 172–79). Additionally, the psychological consultants relied on a medical report from Dr. Michael J. Wuebker, Ph.D., whose opinion is also summarized below. (ECF No. 8, PageID #: 164–66, 173–75).

#### i.  State agency medical consultants

Dr. Linda Hall, M.D., reviewed Claimant's medical history and records on February 24, 2020. (ECF No. 8, PageID #: 169). She reviewed the findings from the administrative hearing on September 21, 2016 and rejected the prior ALJ's RFC since "new and material changes" in Claimant's health had occurred since then. (ECF No. 8, PageID #: 145, 169). Dr. Hall found Claimant was capable of light work with the following exertional restrictions: she could occasionally lift and/or carry twenty pounds (including upward pulling); she could frequently lift and/or carry ten pounds (including upward pulling); she could stand and/or walk (with normal breaks) for six hours in an eight-hour day; she could sit (with normal breaks) for a total of six hours in an eight-hour day. (ECF No. 8, PageID #: 167–68). She recommended the following postural limits: Claimant could occasionally climb ramps or stairs; she could never climb ladders, ropes, or

6

scaffolds; she could occasionally kneel, crouch, or crawl. (ECF No. 8, PageID #: 168). Although Dr. Hall found that Claimant had limited handling and fingering capabilities, she also opined that Claimant could frequently handle and finger. (ECF No. 8, PageID #: 168). Finally, Dr. Hall recommended the following environmental limitations: Claimant should avoid all exposure to hazards, including hazardous heights or machinery, and abstain from commercial driving. (ECF No. 8, PageID #: 169).

Dr. Leon Hughes, M.D., reviewed Claimant's records on June 25, 2020. (ECF No. 8, PageID #: 178). Similar to Dr. Hall, he found that the prior ALJ's findings were inapt since Claimant had new impairments in her hands and feet. (ECF No. 8, PageID #: 177). Dr. Hughes found Claimant capable of light work with the following exertional limitations: Claimant could occasionally lift and/or carry (including upward pulling) twenty pounds; frequently lift and/or carry (including upward pulling) ten pounds; stand and/or walk (with normal breaks) for a total of six hours in an eight-hour workday; sit (with normal breaks) for a total of six hours in an eight-hour workday. (ECF No. 8, PageID #: 176). Dr. Hughes recommended the following postural limitations: occasional climbing ramps/stairs; never climbing ladders/ropes/scaffolds; and occasional kneeling, crouching, and crawling. (ECF No. 8, PageID #: 176). While he recommended limited handling and fingering limitations, and he also found that Claimant could frequently handle and finger. (ECF No. 8, PageID #: 176-77). Finally, Dr. Hughes recommended Claimant avoid all exposure to hazardous machinery and heights, as well as commercial driving. (ECF No. 8, PageID #: 177).

### ii.  State agency psychological consultants

Ms. Katherine Fernandez, Psy.D., reviewed Claimant's records on January 24, 2020. (ECF No. 8, PageID #: 166). She noted that a prior ALJ had issued a decision on December 21, 2016 but

declined to follow those findings since Claimant's B and C Criteria had changed. (ECF No. 8, PageID #: 166). Ms. Fernandez recommended mild limitations for the B Criteria listings and noted that the evidence does not establish the presence of C Criteria listings. (ECF No. 8, PageID #: 166). She also left the following note:

> Claimant followed directions and instructions during exam. Seemed to be functioning in the average range of intelligence. Maintained the flow of conversation. Her attn. was sufficient for questions. She is cooperative and noted no problems interacting with others at work. Seems capable of responding mentally and emotionally appropriately to work setting stressors. No severe impairments documented.

(ECF No. 8, PageID #: 166).

Ms. Jennifer Swain reviewed Claimant's records on June 25, 2020. (ECF No. 8, PageID #: 174). She had the same findings as Ms. Fernandez: she declined to accept the prior ALJ's findings since Claimant's B and C Criteria had changed, found mild limitations for the B Criteria, and noted that the evidence did not support the presence of C Criteria. (ECF No. 8, PageID #: 174). Ms. Swain also made the following observations:

> Claimant followed directions and instructions during exam. Seemed to be functioning in the average range of intelligence. Maintained the flow of conversation. Her attn. was sufficient for questions. She is cooperative and noted no problems interacting with others at work. Seems capable of responding mentally and emotionally appropriately to work setting stressors. No severe impairments documented.

(ECF No. 8, PageID #: 174).

### iii. Dr. Michael J. Wuebker, Ph.D.

The state agency consultants relied on the opinion of Dr. Michael J. Wuebker, Ph.D., to formulate their recommendations. (ECF No. 8, PageID #: 164, 173). Dr. Wuebker completed a psychological evaluation of Claimant on January 20, 2020 at the request of the Ohio Division of

Disability Determination. (ECF No. 8, PageID #: 437). He interviewed Claimant and came to the following conclusion:

> [Claimant] is a 36 year-old woman seeking Social Security. Overall the claimant appeared to be a fairly reliable historian. She did not seem to exaggerate or minimize her symptoms. [Claimant] would appear to meet the clinical standards for an Other Specified Depressive Disorder and a Posttraumatic Stress Disorder diagnosis. She seemed to be operating in the average range of cognition. Her insight and ability to make sound judgments is intact. Her stressors include her health and financial concerns. The claimant's prognosis as regards her mental and emotional issues would seem to be stable.

(ECF No. 8, PageID #: 442).

## IV.  The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of October 25, 2019 through her date last insured of December 31, 2019 (20 CFR 404.1571 et seq.).
>
> 3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia; osteoarthritis of the hands, wrists, ankles, and feet; mild degenerative joint disease of the right knee, status-post subtle non-displaced fracture of the distal fibula; obesity; post-traumatic stress disorder; depression; alcohol, cannabis, and cocaine use disorders; (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: can occasionally climb ramps and stairs, never climb ladders, ropes, or scaffolds; occasionally kneel, crouch and crawl; frequently handle and finger; avoid all exposure to hazardous heights, dangerous machinery, or commercial driving. She is limited to performing simple, routine and repetitive tasks but not at a

production rate pace (e.g. no assembly line work); she is limited to being responsible for simple, work-related decisions; and she can respond appropriately to occasional interaction with supervisors and coworkers, with no tandem work with coworkers, and no interaction with the general public. Finally, she is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 25, 2019, the alleged onset date, through December 31, 2019, the date last insured (20 CFR 404.1520(g)).

(ECF No. 8, PageID #: 81–82, 85, 90, 91).

## V.    Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986)

(*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.*

### VI.  Discussion

Claimant raises two issues on appeal. First, she argues that the ALJ erred in his evaluation of Claimant's subjective complaints and failed to adequately consider her physical impairments. (ECF No. 12, PageID #: 772). Second, she argues that the ALJ's RFC is not supported by substantial evidence and that the ALJ failed to follow regulations related to opinion evidence.

(ECF No. 12, PageID #: 772). Within each issue, Claimant alleges several sub-claims which will be addressed in the following sections.

### A. The ALJ Did Not Err in His Evaluation of Claimant's Subjective Complaints and Considered All of Claimant's Medically Determinable Conditions

Claimant argues that the ALJ "failed to adequately evaluate and account for all of [Claimant's] impairments in his RFC analysis and findings. Further, the ALJ's evaluation of the objective evidence and [Claimant's] allegations was inconsistent with the appropriate legal standard and unsupported by substantial evidence." (ECF No. 12, PageID #: 783–84). Further, she argues that her allegations "were not considered in the light most favorable to [herself] given that the ALJ failed to credit any of her allegations . . . ." (ECF No. 12, PageID #: 783). Claimant argues these oversights harmed her and that if the ALJ had taken her subjective claims seriously, she would have been found disabled in accordance with the restrictions the vocational expert testified about. (ECF No. 12, PageID #: 790, 794). There are several sub-issues Claimant has brought in this claim, and the Commissioner has responded to each in turn. The Court will review these claims below.

#### i. Neuropathy and chronic pain syndrome

Claimant alleges "[t]he ALJ did not mention the diagnoses of chronic pain syndrome or neuropathy in the summation of the evidence relating to the RFC assessment." (ECF No. 12, PageID #: 784–85). Since the ALJ did not explicitly mention these conditions, Claimant argues it is unclear whether the ALJ considered chronic pain syndrome or neuropathy in his RFC." (ECF No. 12, PageID #: 785). The Commissioner responds that Claimant has not met her burden of establishing that neuropathy was medically determinable during the period at issue, which is fatal to her argument. (ECF No. 15, PageID #: 807–08). Likewise, the Commissioner argues that "this is not a case where the ALJ ignored [Claimant's] chronic pain" since he repeatedly referenced her

complaints and symptoms of pain. (ECF No. 15, PageID #: 811). The Commissioner argues this constitutes sufficient review even though the ALJ did not explicitly mention Claimant's alleged chronic pain syndrome. (ECF No. 15, PageID #: 811 (citing *Conroy v. Comm'r of Soc. Sec.*, No. 5:15CV1789, 2016 WL 3971305, at *8 (N.D. Ohio July 25, 2016); *Thornton v. Comm'r of Soc. Sec.*, No. 4:20-CV-1420, 2021 WL 4025192, at *2 (N.D. Ohio Sept. 2, 2021))).

In her reply, Claimant argues that the neuropathy diagnosis relates back to the period at issue since the doctor who ordered the 2020 EMG that revealed neuropathy referenced a record from November 22, 2019 which details symptoms of Claimant's then-undiagnosed condition. (ECF No. 16, PageID #: 833). In May 2020, Claimant points out that a provider noted Claimant has had "numbness and tingling in her feet and hands for over [thirty] years" and lists other alleged neuropathic symptoms observed in 2020. (ECF No. 16, PageID #: 833). As Claimant argues neuropathy relates back to the period at issue, she claims the ALJ improperly excluded this diagnosis from his evaluation. (ECF No. 16, PageID #: 833 (citing *James v. Comm'r of Soc. Sec.*, No. 1:19 CV 570, 2020 WL 836493, at *3 n.2 (N.D. Ohio Feb. 20, 2020); *Harris v. Comm'r of Soc. Sec.*, No. 1:18-cv-01984, 2019 WL 4991641, at *10 N.D Ohio Oct. 8, 2019); *Minor v. Comm'r of Soc. Sec.*, No. 5:18 CV 2233, 2019 WL 6525601, at *11 (N.D. Ohio Dec. 4, 2019))). In addition to this oversight, Claimant argues the ALJ's RFC is not based on the combined effects of all impairments, including chronic pain syndrome. (ECF No. 16, PageID #: 830).

A claimant is only entitled to DIB if they can demonstrate they became disabled prior to their date last insured. *See Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) ("[Claimant] is therefore entitled to benefits only if she became disabled on or before the [date last insured]."); *Makris v. Comm'r of Soc. Sec.*, No. 4:20-CV-02245-DCN, 2021 WL 6617468, at *7 (N.D. Ohio Dec. 27, 2021) ("The claimant bears the burden to establish a disability existing before the

expiration of insured status."); *see also* Social Security Ruling ("SSR") 18-1p ("[A] claimant who has applied for disability insurance benefits under title II of the Act must show that: He or she met the statutory definition of disability before his or her insured status expired . . . ."). Thus, claimants must supplement the record with evidence detailing their heath during the period at issue to obtain DIB. *Makris*, 2021 WL 6617468, at *7 (citing *Forshee v. Comm'r of Soc. Sec.*, No. 11-CV-12339, 2012 WL 1672974, at *8 (E.D. Mich. Apr. 11, 2012), *report and recommendation adopted*, 2012 WL 1676645 (E.D. Mich. May 14, 2012)). While records outside of the period at issue may be submitted, they must relate back to the period at issue in order to be considered by the ALJ. *Wirth v. Comm'r of Soc. Sec.*, 87 F. App'x 478, 480 (6th Cir. 2003) ("Post-expiration evidence must relate back to the claimant's condition prior to the expiration of her date last insured.").

Additionally, the Commissioner argues that the ALJ did not consider neuropathy in his decision because the condition was not medically determinable. (ECF No. 15, PageID #: 807). To be a medically determinable impairment, the "impairment[] must result from anatomical, physiological, or psychological abnormalities that can be *shown by medically acceptable clinical and laboratory diagnostic techniques.*" § 404.1521 (emphasis added). "Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.* The Commissioner will not use a claimant's "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*

Here, the ALJ was presented with an onset date of October 25, 2019 and a date last insured of December 31, 2019. (ECF No. 8, PageID #: 79, 81). Thus, for the ALJ to consider neuropathy and chronic pain syndrome, Claimant needed to present evidence that she experienced these conditions during the period at issue between October 25, 2019 and December 31, 2019. *See Higgs*, 880 F.2d at 862. The earliest records that definitively noted neuropathy are EMG findings from

May 19, 2020, which concluded that Claimant had "left side tibial, peroneal/fibular and sural neuropathy with axonal loss." (ECF No. 8, PageID #: 702). This record was authored almost six months after the date last insured, and Claimant has not referenced any earlier records demonstrating she suffered from neuropathy during the period at issue. (*See* ECF No. 8, PageID #: 702). Although she cited to her subjective testimony of peripheral neuropathy *symptoms* and July 2019 reports, which note symptoms of neuropathy, these fail to establish she struggled with neuropathy during the period at issue. (ECF No. 12, PageID #: 785). During her December 2020 hearing testimony, Claimant stated she had recently been diagnosed with peripheral neuropathy and that she experienced symptoms of this condition for at least a year. However, a claimant's testimony of symptoms alone cannot demonstrate that a condition was medically determinable during the period at issue. § 404.1521. Furthermore, without additional medical information from the period at issue, it is impossible to determine whether the symptoms Claimant experienced in July 2019 were caused by neuropathy or another medical condition. (*See* ECF No. 8, PageID #: 369, 371, 374). Thus, neither of these references establish that neuropathy was medically determinable during the period at issue, and the ALJ is therefore not at fault for his failure to consider this condition in his analysis.

Moreover, "diagnosis does not equate with limitation; the existence of a diagnosis cannot establish disability. . . . the claimant bears the burden of pointing to functional limitations arising from that diagnosis." *Huizar v. Astrue*, No. 3:07CV411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008); *see also Fletcher v. Comm'r of Soc. Sec.*, No. 5:21-CV-02217-CEH, 2022 WL 6156951, at *16 (N.D. Ohio Oct. 7, 2022) ("It is Claimant's burden to prove his conditions created limitations, and it is not enough to simply to point out certain diagnoses or health conditions without proving that they caused restrictions."). Claimant has failed to explain what functional

limitations would have resulted from a neuropathy diagnosis. As the Commissioner correctly points out, there is significant overlap between the symptoms related to neuropathy and other conditions the Claimant was diagnosed with during the period at issue, including fibromyalgia and chronic pain syndrome. (*See* ECF No. 15, PageID #: 809). The ALJ considered the symptoms Claimant alleged were caused by neuropathy and factored these symptoms into his RFC. (*See* ECF No. 8, PageID #: 86 (referring to pain in Claimant's hands, feet, and left shoulder), 87 (ALJ assessing Claimant's pain allegations), 88 (ALJ discussing Claimant's hearing testimony related to pain), 89 (pain was a factor in ALJ's decision to implement mental restrictions), 90 (pain was also a factor in the ALJ's decision to implement environmental limitations)). The ALJ also reviewed the November 22, 2019 record Claimant argues demonstrated neuropathy during the period at issue. (ECF No. 8, PageID #: 86, 87). Thus, even if the ALJ had associated these symptoms with the explicit diagnosis of neuropathy, the RFC would not change because the ALJ already considered these symptoms in his analysis and functional limitations.[2]

Claimant also argues that the ALJ failed to discuss chronic pain syndrome in his decision. But the Court agrees with the Commissioner: even though the ALJ never used the explicit phrase "chronic pain syndrome," the decision is replete with numerous references to Claimant's pain.[3]

---

[2] The Court also notes that Claimant's argument that the neuropathy diagnosis relates back to the period at issue is likely waived as she first argued that the 2020 medical provider referenced a November 22, 2019 record in her reply brief. (*See* ECF No. 16, PageID #: 833). Thus, the argument is likely waived as it was not raised in Claimant's brief. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived.") (citing *Am. Trim, L.L.C. v. Oracle Corp.*, 383 F.3d 462, 477 (6th Cir. 2004)); *see also Braun v. Comm's of Soc. Sec.*, 2021 WL 8016061, at *12 (N.D. Ohio Apr. 7, 2021) ("It is well established that arguments made for the first time in a reply brief are waived.").

[3] *See* ECF No. 8, PageID #: 86 ("[Claimant] was no longer able to physically perform her past work as a press operator due to nearly constant pain in her hands, feet, and left shoulder," "The pain in her feet limited her ability to stand," Claimant visited "pain management specialist[s],

16

Moreover, the ALJ cited Exhibit B11F, the record Claimant cites to establish his chronic pain condition, six times in his RFC analysis. (ECF No. 8, PageID #: 86–88). These citations, in addition to the ALJ's repeated references to Claimant's pain, demonstrate that he clearly reviewed and considered the effects of Claimant's pain on the RFC. As the Commissioner noted, an ALJ need not explicitly state the diagnosis to properly consider a medical record or condition. *See Conroy*, 2016 WL 3971305, at *8; *Thornton*, 2021 WL 4025192, at *2 ("[T]he ALJ fully analyzed the limitations related to Thornton's ankle impairments despite the fact the terms left-ankle avascular necrosis, left-ankle bone infarction, and left-ankle posttraumatic arthritis were never used."). Thus, the Court will not disturb the ALJ's decision on the basis of his failure to consider neuropathy or explicitly reference chronic pain syndrome.

### ii.  Other symptoms including fibromyalgia

Claimant next challenges the ALJ's finding that her subjective testimony concerning the intensity, persistence, and limiting effects of her symptoms was inconsistent with the record. (ECF No. 12, PageID #: 786). She argues the ALJ "failed to identify an inconsistency between [Claimant's] statements and the record as a whole, and the ALJ failed to identify which statements were unsupported." (ECF No. 12, PageID #: 786 (citing *Newsome v. Comm'r of Soc. Sec.*, No. 1:18-cv-2707, 2019 WL 7484048, at *10 (N.D. Ohio Dec. 5, 2019), *report and recommendation*

---

who treated her feet and hand pain," Claimant "took Cymbalta, Voltaren, and Lyrica to treat her fibromyalgia-related pain."), 87 ("[H]er medically determinable impairment could reasonably be expect[ed] to cause, in general, the alleged symptoms and limitations, [and] the magnitude of the pain," Claimant "at times could reasonably experience pain, but prior to her date last insured there is no evidence of muscle atrophy, significant weight loss, gross instability, or neurological deficits generally associated with prolonged severe pain on a regular and continual basis."), 88 ("At the hearing, [Claimant] related that due to her pain . . . ."), 89 (implementing additional mental restrictions to account, in part, for Claimants pain; listing pain as one of Claimant's allegations and noting that the RFC was "not based upon [her] being pain-free . . . but rather was based on her ability to do work activities on a sustained basis despite limitations, such as pain"), 90 ("The environmental limitation . . . considers the claimant's pain").

*adopted sub nom. Newsome v. Comm'r of Soc. Sec.*, No. 1:18-cv-2707, 2020 WL 60189 (N.D.
Ohio Jan. 6, 2020) (citing *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994); *Wilson v. Comm'r
of Soc. Sec.*, 783 F. App'x 489, 502–03 (6th Cir. 2019)))). Claimant first points to the ALJ's
treatment of her fibromyalgia. (ECF No. 12, PageID #: 786–88). While she admits the ALJ
referenced her treatment for the condition and its resultant "tender points," she argues the ALJ did
not properly explain the inconsistencies between the RFC and Claimant's alleged need for greater
limitations for the fibromyalgia and the side effects of its medications.[4] (ECF No. 12, PageID #:
788). Second, Claimant argues the ALJ "mischaracterized" her activities of daily living and failed
to explain how the activities undermine Claimant's allegations. (ECF No. 12, PageID #: 789, 790
(citing *Trowbridge v. Comm'r of Soc. Sec.*, No. 3:19 CV 2356, 2020 WL 6263604, at *10 (N.D.
Ohio Oct. 23, 2020) (citing *Anthony v. Comm'r of Soc. Sec.*, No. 1:13–cv–1237, 2014 WL
4249782, at *8 (N.D. Ohio Aug. 27, 2014); *Romig v. Astrue*, No. 1:12–cv–001552, 2013 WL
1124669, at *5 (N.D. Ohio Mar. 18, 2013)))). She argues that these errors harmed her. (ECF No.
12, PageID #: 790).

On the contrary, the Commissioner asserts that the ALJ stated he rejected Claimant's
allegations of disabling symptoms and generally accepted her claims of pain and fatigue. (ECF
No. 15, PageID #: 811). The Commissioner argues the ALJ referenced multiple lines of evidence
to reject Claimant's alleged disabling limitations and provides five reasons why the ALJ properly
discounted Claimant's allegations and supported his finding with substantial evidence. (ECF No.

---

[4] Claimant also argues in a footnote that the ALJ improperly applied SSR 16-3p by finding
that Claimant's visits to multiple pain specialists undermined her subjective testimony about
fibromyalgia. (ECF No. 12, PageID #: 786 n.3 (citing ECF No. 8, PageID #: 86)). However, the
ALJ never stated that this undermined Claimant's subjective testimony, and the Court cannot
understand how Claimant reached this conclusion. The Court therefore rejects this argument
outright.

15, PageID #: 811 (citing ECF No. 8, PageID #: 86–87)).

Initially, the Commissioner argues the ALJ reasonably disregarded testimony related to symptoms outside of the period at issue. (ECF No. 15, PageID #: 812 (citing ECF No. 8, PageID #: 86–87)). Next, the Commissioner argues the ALJ properly considered Claimant's improvement over the period at issue and the fact that she worked shortly after the date last insured. (ECF No. 15, PageID #: 812–13 (citing ECF No. 8, PageID #: 87)).

The Commissioner then notes that the ALJ referenced several objective findings related to fibromyalgia symptoms that were inconsistent with Claimant's allegations, including "no evidence of muscle atrophy, significant weight loss, gross instability, or neurological deficits generally associated with prolonged severe pain on a regular and continual basis." (ECF No. 15, PageID #: 813 (citing ECF No. 8, PageID #: 87)). The Commissioner argues that this observation is important because it undermines Claimant's argument that she was unable to leave her house and was bedridden. (*See* ECF No. 15, PageID #: 813 (citing *Mausar v. Berryhill*, No. 1:17-cv-00464, 2017 WL 7000379, at *9–12 (N.D. Ohio Dec. 29, 2017); *Fox v. Comm'r of Soc. Sec.*, 5:19-cv-1301, 2020 WL 6568379, at *8, 9–10 (N.D. Ohio July 8, 2020); *Carroll v. Saul*, No. 1:20-cv-700, 2022 WL 224865, at *1 (W.D. Mich. Jan. 26, 2022))). The Commissioner also argues that Claimant is attempting to have the Court improperly reweigh evidence of fibromyalgia. (ECF No. 15, PageID #: 817).

Finally, the Commissioner argues that the ALJ noted that Claimant's daily activities were inconsistent with her allegations of debilitating symptoms and that the activities supported the RFC. (ECF No. 15, PageID #: 814–15). Although Claimant argues the ALJ mischaracterized her daily activities, the Commissioner contends that Claimant has failed to demonstrate how her activities are inconsistent with a sedentary RFC and two-hour walking and standing limit. (ECF

19

No. 15, PageID #: 815).

In her reply, Claimant again asserts that the ALJ failed to identify inconsistencies between her statements and the objective evidence and that he did not apply the correct legal and medical standard to Plaintiff's fibromyalgia allegations. (ECF No. 16, PageID #: 834–35). Claimant argues these errors harmed her because her testimony is "patently inconsistent with a full-time job at any exertional level, including sedentary work." (ECF No. 16, PageID #: 835).[5]

The evaluation of a claimant's subjective complaints rests with the ALJ. *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence in the record. § 404.1529(c); SSR 16-3p. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider. The ALJ need not analyze all seven factors but should show that she considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

"[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an

---

[5] The Court will quickly dispense of Claimant's argument that her subjective testimony is incompatible with full-time work at any exertion level, including sedentary work. (See ECF No. 16, PageID #: 835). There are no functional opinions that recommended part-time work, so this limitation is unsupported by any record. Further, Claimant's subjective testimony—one of several factors the ALJ may consider in determining the RFC—is the only evidence supporting a part-time work finding. *See* §§ 404.1545, 416.945.

age-appropriate manner." SSR 16-3p. The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p; *see also Felisky*, 35 F.2d at 1036 ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248–49).

The ALJ specified Claimant's subjective complaints throughout his RFC analysis section:

> With respect to her symptoms the claimant testified that she stopped working because she was no longer able to physically perform her past work as a press operator due to nearly constant pain in her hands, feet, and left shoulder (Testimony). The claimant related that she had difficulties grabbing and holding onto things with her hands (Testimony). The pain in her feet limited her ability to stand on the concrete floor and she could no longer wear steel toe boots (Testimony). . . . For example, the claimant testified that she recently started using a cane within the past three months (Testimony). . . . The claimant reports experiencing longstanding symptoms of depression for most her life, with a history of cutting and suicidal thoughts (B5F/4). . . . At the hearing, the claimant related that due to her pain, the claimant was limited significantly with her ability to sit, stand, walk, and maintained concentration and attention due to a combination of her impairment-related symptoms including her pain . . . . At the hearing, the claimant admitted activities of daily living including, keeping her home in order and she cares for her children. The claimant explained that her children are typically home all day because she home schools her children. Hearing testimony indicates the claimant cooks meals regularly, cares for small plants, and is able to use her phone and the Internet on her phone (Testimony). The claimant uses the internet to research recipes and information regarding homeschooling (Testimony). The claimant typically drives her daughter to her riding lesson, which she estimates takes about 10 minutes. The claimant explained that she "reads a lot" (Testimony).

21

(ECF No. 8, PageID #: 85–86, 87, 88). Claimant now argues that the ALJ "failed to identify an inconsistency between [Claimant's] statements and the record as a whole . . . [and] failed to identify which statements were unsupported." (ECF No. 12, PageID #: 786). But this is untrue. Throughout his RFC analysis, the ALJ clearly identified inconsistencies between Claimant's allegations of debilitating pain and mental health symptoms and the objective medical record:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> [. . .]
>
> While her medically determinable impairments could reasonably be expect to cause, in general, the alleged symptoms and limitations, the magnitude of the pain and the extent of those symptoms and limitations are not supported by the objective medical evidence, as discussed above.
>
> [. . .]
>
> The records show the claimant obtained additional testing and treatment after her date last insured; however, these records are not within the relevant time period (B12F, B13F, B14F, B15F, and B16F). For example, the claimant testified that she recently started using a cane within the past three months (Testimony). However, this information is not within the relevant period. Notably, the record reflects that shortly after her date last insured, the claimant followed up with Dr. Buonocore and disclosed that she had been using the compound cream with very good results and reported having good results with wrist splints during the day while she was working (B9F/22). The claimant at times could reasonably experience pain, but prior to her date last insured there is no evidence of muscle atrophy, significant weight loss, gross instability, or neurological deficits generally associated with prolonged severe pain on a regular and continual basis.
>
> [. . .]

The claimant reports experiencing longstanding symptoms of depression for most her life, with a history of cutting and suicidal thoughts (B5F/4). However, the claimant has not generally received the type of treatment one would expect given her longstanding complaints. The claimant pursued a limited course of treatment. The claimant has never been psychiatrically hospitalized. The claimant has sporadically participated in mental health counseling as an adult (B5F/4). In January 2020, the claimant disclosed she had last participated in mental health counseling about a year earlier when she was grieving her mother's death (B3F/4). The claimant has managed her symptoms with medications, including Alprazolam, Duloxetine, and Olanzapine (B5F/4).

[. . .]

At the hearing, the claimant related that due to her pain, the claimant was limited significantly with her ability to sit, stand, walk, and maintained concentration and attention due to a combination of her impairment-related symptoms including her pain. As noted, the degree of self-asserted limitations is not supported by the objective medical evidence. Despite her impairments, the claimant has engaged in a somewhat normal level of daily activities and interaction. At the hearing, the claimant admitted activities of daily living including, keeping her home in order and she cares for her children. The claimant explained that her children are typically home all day because she home schools her children. Hearing testimony indicates the claimant cooks meals regularly, cares for small plants, and is able to use her phone and the Internet on her phone (Testimony). The claimant uses the internet to research recipes and information regarding homeschooling (Testimony). The claimant typically drives her daughter to her riding lesson, which she estimates takes about 10 minutes. The claimant explained that she "reads a lot" (Testimony). Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. I find the claimant's ability to participate in such activities is not consistent with the claimant's allegations of functional limitations.

(ECF No. 8, PageID #: 86, 87, 88).

The ALJ discussed Claimant's physical impairments and symptoms at length. (*See* ECF No. 8, PageID #: 86–88). For example, despite Claimant's allegations of debilitating pain, the

record did not demonstrate common effects of pain including "muscle atrophy, significant weight loss, gross instability, or neurological deficits [which are] generally associated with prolonged severe pain on a regular and continual basis." (ECF No. 8, PageID #: 87). In his review of the records immediately preceding the onset date, the ALJ also noted that Claimant failed to follow treatment advice from her podiatrist although she alleged pain in her feet. (*See* ECF No. 8, PageID #: 86). Likewise, the ALJ noted records that showed Claimed had "normal and symmetries (sic) strength in the upper extremities and lower extremities . . . . she has no abnormalities in her hands . . . ." (ECF No. 8, PageID #: 87). The ALJ also noted that on January 31, 2020 Claimant reported "very good results" with the use of a compound cream with lidocaine to treat pain and "good results" from the use of wrist splints, shortly after her date last insured. (ECF No. 8, PageID #: 87). These observations were inconsistent with Claimant's subjective testimony of debilitating pain from fibromyalgia and other conditions.

The ALJ also discussed Claimant's mental health symptoms, including inconsistencies between Claimant's testimony and the record. (ECF No. 8, PageID #: 88). Despite Claimant's testimony of persisting mental health symptoms, the ALJ noted "the claimant has not generally received the type of treatment one would expect give her longstanding complaints. The claimant pursued a limited course of treatment." (ECF No. 8, PageID #: 88). The ALJ also cited records from Dr. Thomas Lautzenheiser, M.D., and Dr. John Buonocore, D.O., noting that Claimant had normal mood, affect, speech, behavior, judgment, thought content, and cognition. (ECF No. 8, PageID #: 88 (citing ECF No. 8, PageID #: 457, 498, 503, 504 509)).

The Court therefore finds that the ALJ clearly identified inconsistencies between Claimant's subjective complaints and the record and explained these findings. While Claimant argues in her brief that the ALJ did not consider her subjective complaints in the light most

favorable to her, that is not the standard to which this Court must adhere. (*See* ECF No. 12, PageID #: 783). This Court can only review whether substantial evidence supports the ALJ's findings, and it does. *See Winn*, 615 F. App'x at 320. Accordingly, the Court will not remand on this issue since substantial evidence supports the ALJ's inconsistency findings related to Claimant's physical and mental health symptoms.

Claimant also specifically argues that the ALJ "mentioned treatment for fibromyalgia and fibromyalgia tender points, [but] failed to explain how the findings are inconsistent with Plaintiff's allegations of greater exertional and nonexertional limitations resulting from her fibromyalgia and side effects of medications." (ECF No. 12, PageID #: 788). She argues that "[t]he ALJ's rejection of Plaintiff's alleged symptoms and side effects was inadequately explained, and remand is required for proper evaluation of fibromyalgia." (ECF No. 12, PageID #: 789). As discussed above, the ALJ did consider the symptoms of fibromyalgia, including pain, and Claimant's treatment including prescriptions for Gabapentin and Cymbalta. (ECF No. 8, PageID #: 87). To the extent that Claimant experienced side effects such as brain fog as she alleges, the ALJ adopted more restrictive mental limitations than the consultants recommended. (*See* ECF No. 12, PageID #: 787; ECF No. 8, PageID #: 89). Thus, the ALJ did not reject Claimant's fibromyalgia symptoms outright but instead refused to accept the degree to which Claimant alleged she experienced these symptoms. This is evidenced by the ALJ's assignment of sedentary work and additional mental health restrictions, decisions he made to account for Claimant's alleged pain and severe impairments, including fibromyalgia. (ECF No. 8, PageID #: 89). Further, Claimant's only suggested limitation for this issue is occasional fingering and handling, which was not suggested by any medical expert. Thus, this restriction is unsupported by the evidence.

Claimant also argues that the ALJ's observation that she did not experience "muscle atrophy, significant weight loss, gross instability, or neurological deficits [which are] generally associated with prolonged severe pain on a regular and continual basis," is irrelevant to fibromyalgia. (*See* ECF No. 8, PageID #: 87; ECF No. 12, PageID #: 788). While fibromyalgia may not cause these symptoms, they are direct consequences of pain, which Claimant admits is caused in part from her fibromyalgia diagnosis. (*See* ECF No. 12, PageID #: 788); *see also Fox*, 2020 WL 6568379, at *10 (finding the ALJ's review of the claimant's lack of muscle atrophy, full muscle strength, and normal gait as reasonable to partially discredit the claimant's subjective complaints of pain in relation to their fibromyalgia); SSR 16-3p ("[A]n individual with reduced muscle strength testing who indicates that for the last year pain has limited his or her standing and walking to no more than a few minutes a day would be expected to have some signs of muscle wasting as a result."). Thus, in assessing and reviewing Claimant's fibromyalgia diagnosis, the ALJ had to review Claimant's allegations of pain and its consequences since "subjective pain complaints play an important role in the diagnosis and treatment of the condition . . . ." as Claimant herself argued in her brief. (*See* ECF No. 12, PageID #: 788 (citing *Wilson*, 783 F. App'x at 503)). Moreover, Claimant's reliance on *James* is misplaced. In that case, the ALJ failed to explain why she discredited the claimant's subjective complaints of pain. 2020 WL 836493, at *8. Here, the ALJ has explained—several times—why she has discredited Claimant's subjective allegations of pain. This "cherry-picked" sentence is only one of several explanations of the ALJ's rationale for discrediting Claimant's allegations of pain.

Finally, Claimant argues that the ALJ mischaracterized her daily activities and failed to explain how they undermine her subjective allegations. (ECF No.12, PageID #: 789–90). In her brief, Claimant attempts to rehash the record, essentially asking the Court to reweigh the evidence

26

related to her daily activities and find that they support a different conclusion. (ECF No. 12, PageID #: 789–90). But simply because a different conclusion could be drawn from the evidence does not warrant disturbing an ALJ's decision. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."). Further, this Court has reviewed the record and finds that substantial evidence supports the ALJ's characterization of Claimant's daily activities.

As for Claimant's allegation that the ALJ failed to explain how Claimant's daily activities undermined her subjective complaints, this argument also fails as the ALJ clearly explained how he came to this conclusion. He noted that despite Claimant's testimony that pain prohibited her from sitting, standing, walking, or maintaining concentration and attention, she also reported a number of activities that require these abilities. (ECF No. 8, PageID #: 88). These included maintaining her home, caring for multiple children, cooking, teaching a child to cook, caring for plants, and home schooling. (ECF No. 8, PageID #: 88). The ALJ also noted that Claimant uses her phone to access the internet and find recipes and homeschooling resources. (ECF No. 8, PageID #: 88). Claimant also used to drive her daughter to horseback riding lessons and "reads a lot." (ECF No. 8, PageID #: 88). The ALJ concluded that "[s]ome of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment," which was what Claimant argued she could not do because of pain. (*See* ECF No. 8, PageID #: 88). Thus, the ALJ found that "[C]laimant's ability to participate in such activities is not consistent with her allegations of functional limitations." (ECF No. 8, PageID #: 88). This description clearly explains why the ALJ found Claimant's daily

activities inconsistent with her subjective testimony. Thus, the Court will not disturb the ALJ's finding based on this argument.

The ALJ's decision satisfies the Court that the ALJ considered all the relevant evidence and that a reasonable mind might accept that evidence as adequate to support the ALJ's credibility finding. There exists, therefore, no compelling reason for the Court to disturb that finding. *Cross,* 373 F. Supp. 2d at 732. [6]

### B. Substantial Evidence Supports the RFC, and the ALJ Did Not Err in His Review of Expert Opinion

Claimant argues that the ALJ failed to comply with § 404.1520c in his evaluation of expert opinions, arguing he did not offer adequate explanations of his credibility findings in terms of supportability and consistency with the record. (ECF No. 12, PageID #: 791–92). She claims the ALJ's improper credibility rulings amounted to harmful error requiring remand. (ECF No. 12, PageID #: 794). The Commissioner argues that the ALJ's explanations of his credibility findings were sufficient. (ECF No. 15, PageID #: 819). The Commissioner states that the ALJ's explanation, "while brief, identified evidence inconsistent with the State agency limitation to light work . . . and also called into question the supportability of the State agency light work limitation . . . ." (ECF No. 15, PageID #: 819). The Commissioner specifically points to the ALJ's reference

---

[6] The Court also rejects Claimant's argument that the ALJ improperly noted Claimant's severe impairments of alcohol, cannabis, and cocaine use disorders which she raised in a footnote. (*See* ECF No. 12, PageID #: 783 n.2). Under Acquiescence Rulings 98-3(6) and 98-4(6), the ALJ was required to adopt the prior ALJ's findings regarding Claimant's severe impairments absent evidence of changed circumstances. (*See* ECF No. 8, PageID #: 79). The 2016 ALJ found Claimant to have alcohol, cannabis, and cocaine use disorders in his decision. (*See* ECF No. 8, PageID #: 147). Thus, the ALJ adopted the severe impairments. Even if this was in error, Claimant has failed to demonstrate how she was harmed by this decision as the decision would be in her favor since additional severe impairments would likely contribute to additional restrictions. The Court therefore will not remand this case based on the ALJ's decision to consider the previous impairments.

to Claimant's combined symptoms, treatment history, medication use, and daily activities to demonstrate his rationale for rejecting the state agency opinions and adopting a sedentary work limitation. (ECF No. 15, PageID #: 819).

At Step Four, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. § 404.1520(e). On January 18, 2017, the Social Security Administration amended the rules for evaluating medical opinions for claims filed after March 27, 2017.[7] *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." § 404.1520c(a). Nevertheless, an ALJ must "articulate how [she] considered the medical opinions and prior administrative medical findings" in adjudicating a claim. *Id.* In doing so, the ALJ is required to explain how she considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. *Id.* at § 404.1520c(b)(2). Medical source opinions are evaluated using the factors listed in § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." §§ 404.1520c(c), 404.1520c(b)(2) ("The factors of supportability [] and consistency [] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions . . . .").

### i.  Dr. Hall and Dr. Hughes

---

[7] The "treating source rule," which generally required the ALJ to defer to the opinions of treating physicians, was abrogated by § 404.1520c for claims filed on or after March 27, 2017, such as here.

Claimant specifically points to the ALJ's evaluations of Dr. Linda Hall and Dr. Leon Hughes, contending that "the ALJ failed to articulate [] how he considered the medical opinions of Drs. Hall and Hughes, and [his rationale] does not relate to the consistency or supportability factors" of § 404.1520c. (ECF No. 12, PageID #: 792, 793). Claimant argues the ALJ's credibility findings are conclusory and that the ALJ's reference to the "totality of the evidence" is insufficient to support his RFC finding which shows he relied on his own lay opinion rather than medical opinions. (ECF No. 12, PageID #: 792–93 (citing *Falkosky v. Comm'r of Soc. Sec.*, No. 1:19-cv-2632, 2020 WL 5423967, at *8 (N.D. Ohio Sept. 10, 2020); *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 908, 912 (N.D. Ohio 2008); *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009))).[8] Although the ALJ adopted the experts' postural, manipulative, and environmental restrictions, Claimant argues the ALJ's failure to adequately explain his reasoning or the evidence the experts relied upon frustrates meaningful judicial review. (ECF No. 12, PageID #: 793). Finally, Claimant argues there is no evidence the doctors evaluated records related to chronic pain, neuropathy, or fibromyalgia. (ECF No. 12, PageID #: 793). Thus, the ALJ's decision to adopt the experts' postural, manipulative, and environmental restrictions is unclear and warrants remand. (ECF No. 12, PageID #: 793–94).[9]

The Commissioner argues the ALJ discounted the opinions of Dr. Hall and Dr. Hughes because they did not discuss Claimant's testimony and prior complaints of pain while standing.

---

[8] The Court will address this specific argument about the ALJ applying his lay opinion in a following section.

[9] Claimant also briefly argues she was harmed by the ALJ's deficient analysis because she would have been found disabled if the ALJ limited her to occasional fingering and handling. (ECF No. 12, PageID #: 794). The Court can easily dispense with this argument since no expert recommended these limitations and the record does not support such a restriction. Substantial evidence supports the ALJ's ultimate determination which was more restrictive than any expert recommendation.

(ECF No. 15, PageID #: 819). But even if the ALJ erred in his analysis of these opinions, the Commissioner argues it was a harmless error because the ALJ adopted an RFC that was more restrictive than the doctors' opinions. (ECF No. 15, PageID #: 819–20 (citing *Ferris v. Comm'r of Soc. Sec.*, No. 5:16-cv-2459, 2017 WL 5187796, at *11 n.4 (N.D. Ohio Nov. 9, 2017); *Malone v. Comm'r of Soc. Sec.*, No. 1:16-cv-1084, 2017 WL 9485649, at *14 (N.D. Ohio May 4, 2017), adopted by 2017 WL 2821449 (N.D. Ohio June 30, 2017); *Pistole v. Kijakazi*, No. 3:20-cv-00249-DCP, 2021 WL 5238777, at *7 (E.D. Tenn. Nov. 10, 2021))). The Commissioner also refutes Claimant's cited cases in favor of remand, noting that these cases supported remand where the ALJ adopted a less restrictive RFC than an expert recommended. (ECF No. 15, PageID #: 820 n.10 (referring to *Lopez v. Comm'r of Soc. Sec.*, 1:20-cv-00575-DCN, 2021 WL 2165415, at *10–11 (N.D. Ohio May 17, 2021); *Reed v. Comm'r of Soc. Sec.*, No. 3:20-cv-02611-CEH, 2021 WL 5908381, at *5–6 (N.D. Ohio Dec. 14, 2021))).

Further, while Claimant argues that Dr. Hall and Dr. Hughes improperly failed to review records related to Claimant's alleged neuropathy, chronic pain syndrome, and fibromyalgia, the Commissioner responds that the doctors "repeatedly" discussed chronic pain and fibromyalgia. (ECF No. 15, PageID #: 821 (citing ECF No. 8, PageID #: 164, 165, 172, 173)). The Commissioner again argues that any evidence related to neuropathy is irrelevant since it occurred after the period at issue, so the doctors were not in error by failing to review this evidence. (ECF No. 15, PageID #: 821).

The ALJ found the opinions of Dr. Hall and Dr. Hughes partially persuasive. (ECF No. 8, PageID #: 89). Both doctors concluded that Claimant could complete light work and recommended several postural, manipulative, and environmental restrictions which the ALJ adopted. (ECF No. 8, PageID #: 168–70 (Dr. Hall), 176–78 (Dr. Hughes)). The ALJ noted that neither doctor adopted

31

the prior ALJ's 2016 RFC but recommended new limitations. (ECF No. 8, PageID #: 89). However, the ALJ questioned the experts' conclusions since they did not consider Claimant's ability to sustain a level of functioning on a regular and continuing eight-hour workday, five days a week. (ECF No. 8, PageID #: 89). Accordingly, while the ALJ adopted the doctors' suggested limitations, his RFC incorporated a more restrictive maximum sustainable work capacity of sedentary work. (ECF No. 8, PageID #: 85, 89). The ALJ departed from the experts' light work capacity to "consider[] the claimant's impairment-related symptoms in combination, as well as the totality of the evidence including the claimant's treatment history, medication use, and activities of daily living." (ECF No. 8, PageID #: 89).

As an initial matter, Dr. Hall and Dr. Hughes did review Claimant's fibromyalgia and chronic pain syndrome, contrary to Claimant's assertions they did not. These conditions are documented in the expert's records under the impairment allegation section. (*See* ECF No. 8, PageID #: 163 ("Chronic pain in feet, Ptsd, Severe anxiety, Fibromyalgia, Chronic pain."), 172 ("Chronic pain in feet, Ptsd, Severe anxiety, Fibromyalgia, Chronic pain.")). Dr. Hall made her recommendation prior to the neuropathy diagnosis in May 2020, and although Dr. Hughes made his recommendations after this diagnosis, he did not consider it since it did not occur during the period at issue. (*See* ECF No. 8, PageID #: 170 (Dr. Hall's recommendation dated February 24, 2020), 178 (Dr. Hughes's recommendations dated June 25, 2020)). As discussed above, Claimant has failed to prove that the neuropathy diagnosis related back to the period at issue, thus, neither expert erred in failing to review this condition.

Claimant next argues that the ALJ did not adequately explain his decision with the required § 1620c factors of supportability and consistency. But even if this is true, and the ALJ erred in failing to discuss these factors, Claimant was unharmed since the ALJ adopted a more restrictive

maximum sustainable work capacity than Dr. Hall and Dr. Hughes recommended. As Commissioner argues, numerous cases in this circuit demonstrate that claimants are not prejudiced when an ALJ adopts a more restrictive RFC than an expert recommended. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004) ("[I]f the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion . . . the failure to give reasons for not giving such weight is correspondingly irrelevant [to harmless error analysis]."); *see also Malone*, 2017 WL 9485649, at *14 (holding that the ALJ's failure to comply with Social Security Administration rules related to analyzing expert opinions was harmless error because the ALJ adopted a more restrictive RFC than the experts recommended); *Ferris*, 2017 WL 5187796, at *11 n.4 ("Because [the ALJ's] RFC determination was more restrictive than the opinions expressed by non-examining state agency physicians, the ALJ's departure from their opinions was, at most, harmless error."); *Belnap v. Comm'r of Soc. Sec.*, No. 1:22-CV-00202-CEH, 2022 WL 17669388, at *7 (N.D. Ohio Dec. 14, 2022) (rejecting the claimant's argument she was prejudiced by the ALJ's failure to adequately explain a credibility finding since the ALJ adopted all that expert's recommendations). Moreover, Claimant does not contest that the ALJ's RFC was more restrictive than the doctors recommended.

The Court further agrees with the Commissioner that the cases Claimant cites in support of her argument, *Lopez* and *Reed*, are inapposite with this case. *See* 2021 WL 2165415, at *10; 2021 WL 5908381, at *5–6. The ALJs in those cases rejected expert testimony and adopted *less* restrictive limitations than the experts recommended.[10] *See id.* Those cases are therefore

---

[10] In *Lopez*, the ALJ rejected an expert opinion that recommended the claimant "perform no manipulation or reaching with her right-upper extremity" and adopted an RFC with the following limitations: "She can push/pull as much as she can lift and carry. She can operate hand controls frequently and bilaterally. She can perform frequent bilateral fingering. She can perform

distinguishable from the instant matter. As Claimant was not prejudiced by the ALJ's finding and subsequent decision, the Court will not disturb this finding.

### ii. State agency psychologists

Claimant also argues the ALJ's analysis of the other opinions "falls short of the legal standards, and the ALJ failed to apply the required factors of supportability and consistency to each opinion." (ECF No. 12, PageID #: 792). This includes the opinions of Ms. Katherine Fernandez, and Ms. Jennifer Swain, the state agency psychological consultants. (ECF No. 12, PageID #: 791).

The Commissioner rejects this challenge, arguing that the ALJ adequately reviewed the supportability and consistency of these opinions, and that even if the ALJ found the opinions persuasive, it would not make the RFC more restrictive as the psychologists did not recommend severe limitations. (ECF No. 15, PageID #: 822). Further, the Commissioner argues that the ALJ correctly noted that the psychologists relied on medical records from after the period at issue, which undermines their credibility. (ECF No. 15, PageID #: 822 (citing *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 861 (6th Cir. 2020))). To the extent Claimant seeks to challenge the actual findings of state agency psychologists, the Commissioner argues that any error actually helped Claimant as the RFC included mental restrictions above and beyond the psychologists' recommendations. (ECF No. 15, PageID #: 822–23). The Commissioner also rejects Claimant's argument that the ALJ improperly discredited Dr. Michael J. Wuebker's opinion and argues

---

frequent bilateral handling." *See* 2021 WL 2165415, at *5, *10. Likewise, in *Reed*, the ALJ's RFC did not fully adopt the expert opinion at issue, so the ALJ's failure to adequately explain the credibility finding was not harmless error. *See* 2021 WL 5908381, at *5–6. That is not the case here, where the ALJ fully adopted the expert's restrictions but implemented a more restrictive work capacity.

Claimant has not demonstrated any harm caused by the ALJ's findings. (ECF No. 15, PageID #: 823–24).

The ALJ was not persuaded by the opinions of Ms. Fernandez and Ms. Swain, the state agency psychological consultants. (ECF No. 8, PageID #: 89). Both experts recommended mild mental limitations and relied on a record from Dr. Wuebker, who Claimant saw on January 20, 2020. (ECF No. 8, PageID #: 164–66 (Ms. Fernandez), 173–74 (Ms. Swain), 437 (Dr. Wuebker)). The ALJ found that the consultants' opinions were inconsistent with the record and discounted their opinions since they primarily relied upon Dr. Wuebker's record. (ECF No. 8, PageID #: 89). The ALJ appeared to discredit Dr. Wuebker's opinion since it was outside the period at issue. (ECF No. 8, PageID #: 89).

Here, even if the ALJ erred in failing to perfectly review the supportability and consistency factors, Claimant was not harmed by the ALJ's finding as the ALJ adopted mental limitations that were more restrictive than the consultants recommended. (*See* ECF No. 8, PageID #: 85). While the experts found that Claimant had mild mental health restrictions, the ALJ adopted the following mental limitations:

> She is limited to performing simple, routine and repetitive tasks but not at a production rate pace (e.g. no assembly line work); she is limited to being responsible for simple, work-related decisions; and she can respond appropriately to occasional interaction with supervisors and coworkers, with no tandem work with coworkers, and no interaction with the general public. Finally, she is limited to tolerating few changes in the work setting, defined as routine job duties that remain static and are performed in a stable, predictable work setting. Any necessary changes need to occur infrequently, and be adequately and easily explained."

(ECF No. 8, PageID #: 85). As discussed above, when an RFC is more restrictive than a rejected expert opinion, any discrepancy in the ALJ's explanation of the expert opinion is harmless error. *See Wilson*, 378 F.3d at 547; *see also Malone*, 2017 WL 9485649, at *14; *Ferris*, 2017 WL

5187796, at *11 n.4; *Belnap*, 2022 WL 17669388, at *7. Moreover, Claimant neither contests that the ALJ's RFC was more restrictive than the consultants' limitations nor recommends restrictions of her own. As the ALJ's limitations were more restrictive than the experts' recommendations, Claimant was not harmed by the ALJ's credibility finding, and the Court will not disturb the ALJ's decision on this point.[11]

### iii. Lay opinion argument and supplementing the record

Finally, Claimant argues the ALJ improperly relied upon his lay opinion rather than medical opinion or evidence. (ECF No. 12, PageID #: 793 (citing *Falkosky*, 2020 WL 5423967, at *8)). She argues that the record "does not show relatively little physical impairment, and it was impermissible for the ALJ to render a commonsense judgment about functioning in the absence of a medical opinion." (ECF No. 12, PageID #: 793 (citing *Simpson*, 344 F. App'x at 194; *Deskin*, 605 F. Supp. 2d at 912)). Claimant also contends that the record does not contain evidence aligned with the ALJ's lay opinion and that the ALJ should have requested a treating source opinion or consultative examination. (ECF No. 12, PageID #: 794–95 (citing *Oaks v. Astrue*, No. 5:10CV2054, 2012 WL 646152, at *11 (N.D. Ohio Jan. 17, 2012); *Landsaw v. Sec'y of HHS*, 803 F.2d 211, 214 (6th Cir. 1986); *Wilson*, 783 F. App'x at 501)). Finally, Claimant argues that the ALJ should have ordered a physical examination and that the remaining record after discounting the opinions of Dr. Hall and Dr. Hughes consists only of diagnostic evidence which does not recommend functional limitations. (ECF No. 12, PageID #: 795 (citing *Deskin*, 605 F. Supp. 2d at 912)).

---

[11] To the extent Claimant also attempts to challenges the ALJ's limited analysis of Dr. Wuebker's opinion, the same analysis applies as Dr. Wuebker concluded that Claimant "seemed to be operating in the average range of cognition." (*See* ECF No. 8, PageID #: 442). This is comparable to the psychological consultants' findings that Claimant only required "mild" restrictions.

The Commissioner first distinguishes the instant case from *Falkosky*, where the court found that the ALJ had a duty to develop the record as there were no medical opinions, since this case had four state agency medical findings and a psychological consultative opinion. (*See* ECF No. 15, PageID #: 824); 2020 WL 5423967, at *8. Second, the Commissioner argues that the ALJ crafted its RFC based on the physical limitations from the state agency assessments and adopted mental limitations that were more restrictive than the opinions of the state agency psychologists and Dr. Wuebker. (ECF No. 15, PageID #: 824). If the ALJ were to obtain new medical opinions, as Claimant now suggests, the Commissioner argues the records would be of limited utility since over two and a half years have passed since the period at issue. (ECF No. 15, PageID #: 824). The Commissioner argues this is a veiled attempted to shift Claimant's own burden of proof onto the ALJ and that ALJs are not required to adopt RFCs that perfectly mirror a medical opinion, as this would improperly confer a medical source with disability determination power. (ECF No. 15, PageID #: 825 (citing *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013); *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401 (6th Cir. 2018))). The Commissioner finally argues that some of Claimant's cases are inapposite to the instant case, including *Lashley v. Secretary of Health and Human Services* and *Tucker on behalf of P.C.W. v. Commissioner of Social Security*. (ECF No. 15, PageID #: 826 (citing 708 F.2d 1048, 1051–53 (6th Cir. 1983); No. 1:18 CV 1039, 2019 WL 2331647, at *12 (N.D. Ohio May 15, 2019))).

While Claimants are generally required to supplement the record to meet their burden of establishing a disability, ALJs may also have a duty to further develop the record. *See* § 404.1512(a)(1); *Norman v. Comm'r of Soc. Sec.*, 37 F. App'x 765 (6th Cir. 2002) ("It is the claimant's burden to prove that she is disabled. She is responsible for furnishing evidence that can be used to reach the conclusion that she is disabled. . . . Only under special circumstances . . . does

the ALJ have a special duty to develop the record."); *Falkowsky*, 2020 WL 5423967, at *5–8; *see also Bass v. McMahon*, 499 F.3d 506, 514 (6th Cir. 2007) (citing § 404.1529(c)(2) to demonstrate ALJs must develop the record at times and finding that the instant ALJ's sufficiently developed the record). "The determination of whether an ALJ has failed to fully develop the record must be made on a case-by-case basis." *Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 262 (6th Cir. 2015). For example, if a claimant is not represented by counsel or experts have not provided functional recommendations, the ALJ may have a duty to supplement the record. *See Lashley*, 708 F.2d at 1051–53 (pro se claimants); *Deskin*, 605 F. Supp. 2d at 912 (no functional recommendations). However, "[a]n ALJ is not required to obtain all medical evidence, just what is necessary to properly make his determination." *Burks v. Comm'r of Soc. Sec.*, No. 1:21-cv-345, 2022 WL 17364887, at *6 (N.D. Ohio Oct. 20, 2022).

Here, the ALJ reviewed the evidence Claimant submitted—including four medical opinions and thirteen medical exhibits—and adopted an RFC based on these recommendations and reports. (*See* ECF No. 8, PageID #: 85–90). Notably, each of the four state agency consultants provided functional limitations that the ALJ reviewed. (*See* ECF No. 8, PageID #: 89, 163–70, 172–79). The ALJ adopted nearly all the physical restrictions Dr. Hall and Dr. Hughes recommended and only departed from their recommendations to assign Claimant a sedentary work capacity, a more restrictive limitation than the doctors recommended. (ECF No. 8, PageID #: 85, 89). This actually aligns with Claimant's own assertion that "[t]he record supports greater limitations than opined by Drs. Hall and Hughes." (*See* ECF No. 12, PageID #: 794). Further, while the ALJ considered the mental recommendations from the Ms. Fernandez and Ms. Swain, he ultimately decided to incorporate more restrictive limitations based on Claimant's "mental-impairment related symptoms, in combination[] with her pain . . . ." (ECF No. 8, PageID #: 89).

The ALJ also reviewed numerous medical exhibits from before, during, and after the period at issue, evidence from Claimant's prior administrative hearing, and Claimant's subjective testimony from her December 2020 hearing to establish an RFC. (ECF No. 8, PageID #: 85–90). The Court therefore finds that substantial evidence supports the ALJ's RFC.

Based on the Court's review of the record and the ALJ's decision, it cannot find any circumstances that warranted expansion of the record. Claimant was represented by counsel at the hearing, obtained and submitted multiple functional assessments, and has not demonstrated any other circumstance that would demand additional records. (*See* ECF No. 8, PageID #: 79 (Claimant had counsel)). To the extent that Claimant argues additional records are necessary since the opinions of Dr. Hall and Dr. Hughes are inadequate because they failed to discuss neuropathy, this argument fails. As discussed above, the experts did not review the neuropathy diagnosis because it was outside the period at issue and therefore irrelevant. The Court also notes that Claimant's reliance on *Oaks* is misplaced since the ALJ in that case improperly relied on an expert opinion that completely disregarded multiple diagnoses from the period at issue. *See* 2012 WL 646152, at *11. That is not the case here, as was previously discussed.

Moreover, the Court agrees with the Commissioner that Claimant's reliance on *Falkowsky* and *Deskin* is also misplaced as both cases are factually distinguishable from the instant matter. In *Falkowsky*, there were no medical opinions for the ALJ to review, so the court found that the ALJ had a responsibility to supplement the record with medical opinions. 2020 WL 5423967, at *8. The instant case is clearly distinguishable since the ALJ reviewed four medical opinions that offered functional limitations. (*See* ECF No. 8, PageID #: 89). Likewise, *Deskin* is also distinguishable since the ALJ in that case relied on one medical opinion that failed to account for two years of subsequent medical records. 605 F. Supp. 2d at 910. That is not the case here, since

the four medical opinions the ALJ reviewed occurred shortly after the date last insured and less than a year before the hearing, thus reviewing all relevant evidence for Claimant's health during the period at issue. (*See* ECF No. 8, PageID #: 163–70, 172–79).[12]

Finally, to the extent Claimant seeks to remand this case because the ALJ's RFC did not match any one medical opinion, this argument fails. ALJs are vested with the authority to determine an appropriate RFC. *See* § 416.946(c). Thus, they have the discretion to adopt or reject the restrictions recommended by medical sources and need not find a medical opinion that perfectly mirrors their RFC. *See id.*; § 404.1520c(a).

The Court therefore finds no reasons to disturb the findings of the ALJ in this matter.

**VII.    Recommendation**

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Claimant's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: January 23, 2023

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE

---

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document. Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F. 3d 520, 530–31 (6th Cir. 2019).

---

[12] The Court notes that Claimant continues to challenge the ALJ's decision not to supplement the record in her reply. (ECF No. 16, PageID #: 836–38). However, Claimant admitted that "there is no bright-line rule requiring an ALJ to obtain a medical opinion when the record only contains the opinions of non-examining State agency reviewing physicians," and her argument is based on her assertion that the opinions of Dr. Hall and Dr. Hughes were inadequate and should be disregarded. (ECF No. 16, PageID #: 837–38). As discussed above, these opinions are not uncredible for the reasons Claimant argues they are, so this reply brief fails as well.